UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| LeDuc Gifts & Specialty Products, LLC, | Case No. 18-cv-2855 (WMW/TNL) |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS** |
| New Thermo-Serv, Ltd., | |
| Defendant. | |

This matter is before the Court on Defendant's motion to dismiss for lack of personal jurisdiction. (Dkt. 6.) For the reasons addressed below, Defendant's motion is granted and the complaint is dismissed without prejudice.

## BACKGROUND

Plaintiff LeDuc Gifts & Specialty Products, LLC (LeDuc), is a Minnesota limited liability corporation. Until 2018, LeDuc's primary business model was designing, manufacturing, and selling thermal tumblers. Defendant New Thermo-Serv, Ltd. (NTS), is a Texas limited partnership that also sells thermal tumblers. NTS's principal place of business and general partner are located in Texas.

In 2014, one of LeDuc's related entities, 4Brava, LLC (4Brava), entered a partnership with DSC Products Holding, LLC (DSC). The partnership created and sold thermal tumblers for mass-market retailers. The relationship between LeDuc and DSC deteriorated in 2015 when Daniel Sachs, the owner of DSC, allegedly embezzled funds from the partnership and misappropriated LeDuc's trade secrets. LeDuc contends that

Sachs unlawfully duplicated and made minor improvements to LeDuc's molds and manufacturing equipment.

LeDuc and 4Brava commenced lawsuits against Sachs and DSC in June 2015 (the "Sachs litigation"). As the Sachs litigation proceeded in the United States District Court for the District of Minnesota, Sachs offered to sell thermal tumbler molds and equipment to NTS. NTS purchased the molds and equipment from Sachs in the fall of 2016. A draft asset purchase agreement (APA) acknowledges the ongoing Sachs litigation. But the final APA does not refer to the litigation. NTS used the molds and equipment purchased from Sachs to sell thermal tumblers, ultimately competing with LeDuc.

After learning of the 2016 sale between Sachs and NTS, LeDuc and 4Brava sent cease and desist letters to NTS.[1] NTS continued to use the molds and equipment and to sell the competing tumblers.

LeDuc initiated this lawsuit on October 4, 2018, alleging claims against NTS for misappropriation of trade secrets, unjust enrichment, tortious interference with prospective economic advantage, and tortious interference with contracts.

**ANALYSIS**

NTS moves to dismiss the complaint for lack of personal jurisdiction. In opposition to the motion, LeDuc delineates six contacts with Minnesota which, LeDuc argues, justify

---

[1] LeDuc's cease and desist letters rely on a March 30, 2017 order from the Sachs litigation in which the district court found that Sachs and DSC breached their respective fiduciary duties to LeDuc. *See LeDuc Gifts & Specialty Prods., LLC v. Sachs*, No. 15-cv-2743 (D. Minn. March 30, 2017). LeDuc alleges that NTS was using molds and equipment that were the product of these breaches.

the exercise of specific personal jurisdiction over NTS. These proffered contacts are (1) NTS's negotiations of the APA with Sachs; (2) NTS's communications with Aroplax, the company storing the molds and equipment; (3) NTS's communications with LeDuc about the molds it purchased from Sachs; (4) Sachs's performance of the APA, including shipping the molds and equipment from Minnesota; (5) NTS's sale of thermal tumblers to Minnesota customers; and (6) NTS's alleged interference with LeDuc's business, which caused harm to LeDuc in Minnesota.

To survive a motion to dismiss for lack of personal jurisdiction, Fed. R. Civ. P. 12(b)(2), a "plaintiff must make a prima facie showing that personal jurisdiction exists," *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591 (8th Cir. 2011). In doing so, a plaintiff must plead facts sufficient "to support a reasonable inference that the defendant can be subjected to jurisdiction within the state." *K-V Pharm. Co.*, 648 F.3d at 592 (internal quotation marks omitted) (alteration omitted). Although the quantum of evidence necessary to make this prima facie showing is minimal, pleadings alone are insufficient. *Id.* Such evidence must be supported by the affidavits and exhibits and sufficient to withstand a challenge that is similarly robust. *Id.* When analyzing whether a plaintiff has satisfied this requisite showing, the district court views the evidence in the light most favorable to the plaintiff and resolves all factual conflicts in the plaintiff's favor. *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996).

Federal courts apply state law when determining the bounds of their personal jurisdiction. *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). Because Minnesota's long-arm statute, Minnesota Statutes Section 543.19, extends jurisdiction to the maximum limit

permitted by due process, a federal court in Minnesota need only determine whether its exercise of personal jurisdiction comports with due process. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995).

Due process requires that a non-resident defendant have sufficient minimum contacts with the forum state such that subjecting the defendant to the lawsuit in that forum does not offend "traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980) (internal quotation marks omitted). "Sufficient minimum contacts requires some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 821 (8th Cir. 2014) (internal quotation marks omitted). And the defendant's contact with the forum state must be "such that [the defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297.

Courts employ a five-factor test to determine the sufficiency of a defendant's contacts with the forum state: (1) the nature and quality of contacts with the forum state, (2) the quantity of contacts, (3) the relation of the cause of action to the contacts, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience of the parties. *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983). The first three factors have "primary" importance, whereas the latter two are "secondary" factors. *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010); *accord Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996). The third factor, the relation of the contacts to the cause of action, can be satisfied by either

general or specific jurisdiction. *Burlington*, 97 F.3d at 1102-03. Specific personal jurisdiction, the type of personal jurisdiction asserted here, "is jurisdiction over causes of actions arising from or related to the defendant's actions in the forum state." *Wessels, Arnold & Henderson*, 65 F.3d at 1432 n.4.

### I. Primary Factors

When analyzing personal jurisdiction, courts give significant weight to the nature and quality of the asserted contacts, the quantity of contacts, and the relation of the contacts to the cause of action. Each ground for personal jurisdiction that LeDuc advances is analyzed here in light of these primary factors.

### A. Negotiation and Performance of the APA and Related Communications

LeDuc contends that NTS's activity related to the APA establishes personal jurisdiction. First, LeDuc alleges that by negotiating the APA, NTS became aware of the ongoing litigation between DSC and LeDuc in Minnesota. Second, LeDuc alleges that NTS communicated with Aroplax and LeDuc, which are Minnesota companies. Third, the APA was performed in Minnesota because, LeDuc asserts, NTS purchased products that were shipped from a Minnesota storage location.

When the assertion of specific personal jurisdiction is based on a contract, courts consider the "terms of the contract and its contemplated future consequences," including whether the contract is for the development or sale of any products in the forum state. *Fastpath*, 760 F.3d at 821-22. A contract may form the basis of specific personal jurisdiction when it expressly contemplates multiple events in the forum state, including, for example, submission of purchase orders and payment to the forum state, delivery of the

5

product to the forum state, and customer pick-up in the forum state. *See Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 519-20 (8th Cir. 2010). In contrast, a contract that is negotiated outside the forum state and requires payments and delivery of the product to a non-forum state is insufficient to establish personal jurisdiction. *See Dairy Farmers of Am. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 478-79 (8th Cir. 2012).

The circumstances surrounding a contract are generally insufficient, without more, to support a court's exercise of personal jurisdiction over a non-resident defendant. For example, "scattered emails, phone calls, and a wire-transfer of money" are not sufficient contacts for personal jurisdiction. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011). Similarly, the storage location of materials that are the subject of the contract is not a dispositive factor in the analysis of personal jurisdiction. *See Viracon, Inc. v. J & L Curtain Wall LLC*, 929 F. Supp. 2d 878, 884-85 (D. Minn. 2013) (explaining that when the plaintiff chooses the storage location, not the defendant, the chosen location does not amount to the *defendant* purposefully availing itself of the privileges of the forum state).

NTS's conduct relating to the contract, the APA, includes negotiation of the APA, conversations related to the APA, and performance of the APA. But this conduct is not of sufficient quality or quantity to establish minimum contacts with Minnesota. LeDuc does not allege that the APA was negotiated in Minnesota or that NTS made any payments to Minnesota. *Cf. Wells Dairy*, 607 F.3d at 519-20. And the molds and equipment were delivered to Texas, not Minnesota. *Cf. id.* Although the draft APA refers to the Sachs litigation in Minnesota, the draft does not contemplate any sales in Minnesota. Moreover,

6

the final version of the APA omits all references to Minnesota.[2] And the isolated conversations that NTS had with Aroplax and LeDuc are the type of scattered communications that the Eighth Circuit has rejected as a basis for specific personal jurisdiction. *See Viasystems*, 646 F.3d at 594. Finally, the storage location of the equipment is of little significance to this analysis, particularly because there is no allegation that NTS chose the storage location. *See Viracon*, 929 F. Supp. 2d at 884-85.

Although the negotiation of the APA, the surrounding communications about the APA, and the performance of the APA loosely relate to LeDuc's causes of action, these contacts are of insufficient quality and quantity to establish specific personal jurisdiction over NTS.

**B.     Sales to Minnesota Customers**

LeDuc next asserts that NTS's sales to Minnesota customers support this Court's exercise of specific personal jurisdiction over NTS.

A defendant's single, direct sale to the forum state may be sufficient to confer personal jurisdiction. *See Pope v. Elabo GmbH*, 588 F. Supp. 2d 1008, 1020 (D. Minn. 2008) (distinguishing a direct sale from a sale made through an intermediary distributor). But a defendant's mere knowledge that a sale *may* occur in the forum state is not sufficient

---

[2] LeDuc argues that the *expectation* of litigation in Minnesota supports this Court's exercise of personal jurisdiction over NTS. But LeDuc produces no case law, nor has the Court's research produced any, holding that an expectation of litigation, without more, is a cognizable contact for the purpose of a personal-jurisdiction analysis. An awareness that *other* entities are involved in litigation in Minnesota does not establish that NTS "purposefully avail[ed] itself of the privilege of conducting activities" in Minnesota. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

to establish personal jurisdiction. Placing a product into the stream of commerce is not, by itself, sufficient to establish specific personal jurisdiction. *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987) (plurality) ("[A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.").

Here, LeDuc argues that NTS sold thermal tumblers to Minnesota residents using intermediaries including Amazon, Walmart, Bed Bath & Beyond, and Overstock. LeDuc makes no allegations of any direct sales by NTS to Minnesota customers, however. NTS's nationwide sales via third-party retailers, which might have included sales to Minnesota customers, are not sufficient minimum contacts. *See id.*; *cf. Pope*, 588 F. Supp. 2d at 1020.

Accordingly, NTS's sales to Minnesota customers do not justify this Court's exercise of specific personal jurisdiction over NTS.

### C. Tortious Conduct

Finally, LeDuc alleges that NTS tortiously interfered with LeDuc's prospective economic advantage and contracts in a manner that caused harm in Minnesota.

A defendant's tortious conduct can support a court's exercise of personal jurisdiction if a plaintiff establishes that "the defendant's acts (1) were intentional, (2) were *'uniquely' or expressly aimed* at the forum state, and (3) caused harm, the brunt of which was suffered—and which the defendant knew was likely to be suffered—there." *Zumbro, Inc. v. Cal. Nat. Prods.*, 861 F. Supp. 773, 782-83 (D. Minn. 1994) (emphasis added). A defendant's acts are expressly aimed at the forum state when the acts are "performed for

8

the very purpose of having their consequences felt in the forum state." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1391 (8th Cir. 1991) (internal quotation marks omitted). But mere effects in the forum state, without other contacts, are insufficient to confer personal jurisdiction. *Johnson*, 614 F.3d at 797.

LeDuc alleges that NTS's sales of thermal tumblers constituted intentional torts. Yet even assuming (without deciding) that NTS's actions were tortious, LeDuc fails to provide any basis to conclude that NTS's sales were "performed for the very purpose of having [the] consequences felt" in Minnesota. *Dakota Indus.*, 946 F.2d at 1391. NTS purchased the molds and equipment from a California company and subsequently sold the manufactured thermal tumblers to customers nationwide. That LeDuc experienced competitive harm in Minnesota does not establish that NTS targeted Minnesota. *See Johnson*, 614 F.3d at 797. Without more, the competitive harm that LeDuc experienced in Minnesota does not confer personal jurisdiction over NTS.

### D. Cumulative Contacts

None of LeDuc's proffered contacts is sufficient to confer specific personal jurisdiction over NTS. Nor are the contacts sufficient when considered together. Isolated conversations, nationwide sales, and a contract with, at best, tenuous Minnesota connections do not establish NTS's purposeful availment of the privileges of conducting business in Minnesota. *See Fastpath*, 760 F.3d at 821. Although the contacts relate to LeDuc's asserted causes of action and, accordingly, satisfy the third *Land-O-Nod* factor, the remaining primary factors—the quality and quantity of contacts—disfavor this Court's exercise of personal jurisdiction over NTS.

## II. Secondary Factors

In addition to the preceding personal jurisdiction analysis, a court may consider the interest of the forum state in providing a forum for its residents and the convenience of the parties. *Land-O-Nod Co.*, 708 F.2d at 1340. But these factors are of secondary importance. *Burlington Indus., Inc.*, 97 F.3d at 1102. And when, as here, minimum contacts are not present, these secondary factors cannot overcome that deficiency. *Cf. Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985); *see also Digi-Tel Holdings, Inc.*, 89 F.3d at 525. Moreover, neither secondary factor weighs strongly in favor of this Court's assertion of personal jurisdiction, if at all. The lack of any significant connection between the APA and Minnesota undermines LeDuc's argument that Minnesota has a strong interest in resolving this dispute. *See Viracon, Inc.*, 929 F. Supp. 2d at 885 (observing that Minnesota's interest in providing a forum for its residents is minimal when the dispute has no real connection to the state). And, presumably, there are multiple witnesses for whom Minnesota is not a convenient forum, given that the APA is between non-Minnesotan entities.

For these reasons, LeDuc has not met its prima facie burden of establishing this Court's personal jurisdiction over NTS.[3]

---

[3] LeDuc asserts that, if the Court lacks personal jurisdiction over NTS, the interests of justice support transferring this case "[b]ecause of potential statutes of limitations barring claims in the event that the filing date is delayed by dismissal." But LeDuc does not identify the applicable statutes of limitation, the approaching deadlines, or the district to which this matter should be transferred. Nor did LeDuc supplement its briefing following the oral argument, despite LeDuc's representation to the Court that it would do so. As the Court identifies no compelling reason to transfer the case, it declines LeDuc's requested alternative disposition. *See Viracon, Inc.*, 929 F. Supp. 2d at 887 n.11.

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant's motion to dismiss, (Dkt. 6), is **GRANTED**.

2. Plaintiff's complaint, (Dkt. 1), is **DISMISSED WITHOUT PREJUDICE**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: May 29, 2019
s/Wilhelmina M. Wright
Wilhelmina M. Wright
United States District Judge